Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Margaret Meltzer*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Meltzer,<br><br>        Plaintiff,<br><br>    v.<br><br>The Hartford Life and Accident Insurance Company; Casino Arizona/Salt River Pima-Maricopa Indian Community; Casino Arizona/Salt River Pima-Maricopa Indian Community Disability Plan,<br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Margaret Meltzer (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Casino Arizona/Salt River Pima-Maricopa Indian Community (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by The Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford"). The specific Hartford group disability policy is known as Group Policy No.: GLT685800 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Hartford Policy was to provide disability insurance for its employees. Upon information and belief, the Hartford Policy may have been included in and part of an employee benefit plan, which may have been named the Casino Arizona/Salt River Pima-Maricopa Indian Community Disability Plan, (hereinafter referred to as the "Plan") and was created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Hartford functioned as the claims administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Hartford.

5. Hartford operated under a conflict of interest in evaluating Plaintiff's long term disability claim due to the fact that it operated in dual roles as the decision maker with

regard to whether she was disabled as well as the payor of benefits; *to wit*, Hartford's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her disability benefits. When Hartford denied Plaintiff's disability claim, it saved a significant sum of money.

6. The Company, Hartford and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Plan or any other Company Plan as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about March 25, 2011 due to serious medical conditions and was unable to work in her designated occupation as a Blackjack Shift Manager. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to work in any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved, paid and have been exhausted. Plaintiff then filed for long term

1  disability benefits under the relevant Policy which was administered by Hartford, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant Hartford Policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
> - Your Occupation during the Elimination Period;
> - Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> - after that, Any Occupation.

12. Hartford approved Plaintiff's long term disability claim and paid Plaintiff long term disability benefits through September 21, 2013.

13. As part of a review of Plaintiff's claim for long term disability benefits, Hartford obtained a medical records only "paper review" from R. Scott Benson, M.D.

14. Upon information and belief, Plaintiff believes Dr. Benson may be a long time medical consultant for the disability insurance industry and/or Hartford. As a result, Plaintiff believes Dr. Benson may have an incentive to protect his own consulting relationship with the disability insurance industry and/or Hartford by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and/or Hartford and which supported the denial of Plaintiff's claim.

15. In a letter dated September 27, 2013, Hartford notified Plaintiff it was terminating her long term disability benefits beyond September 21, 2013.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the September 27, 2013 termination of her benefits and in support of her appeal, Plaintiff submitted additional

medical, vocational and lay-witness evidence demonstrating she met any definition of disability set forth in the relevant Hartford Policy.

17. In support of her appeal, Plaintiff submitted to Hartford a March 3, 2014 medical questionnaire and March 17, 2014 narrative letter from her current treating board certified physician, who opined, "[Plaintiff]…to the best of my medical opinion is permanently disabled."

18. Plaintiff submitted to Hartford an Independent Medical Examination report authored by a physician board certified in physical medicine and rehabilitation, as well as pain medicine, who determined after a physical examination of Plaintiff and her serious medical conditions that, "…[Plaintiff] is incapable of any sustained gainful employment."

19. Plaintiff also submitted to Hartford a Functional Capacity Evaluation report dated December 21, 2013 wherein after an extensive evaluation, a qualified physical therapist determined, "…[Plaintiff] is unable to perform any categorical work at this time, even <u>sedentary</u>" (original emphasis).

20. In further support of her appeal, submitted to Hartford a vocational report from a certified vocational expert dated April 1, 2014, who after reviewing Plaintiff's medical evidence and interviewing Plaintiff concluded, "…it is clear that [Plaintiff] fully meets the criteria set forth in her disability Policy or any such policy that concerns itself with disabling conditions."

21. In addition to the medical records and reports submitted to Hartford, Plaintiff submitted two sworn affidavits from herself and her husband, both who confirmed Plaintiff is unable to work in any occupation and her medical condition has not improved in any way since her date of disability.

1   22. Upon information and belief, as part of its review of Plaintiff's claim for long
2   term disability benefits, Hartford obtained medical records only "paper reviews" from Drs.
3   Helen Muhlbauer and Anthony Almazan.

4   23. Upon information and belief, Plaintiff believes Drs. Muhlbauer and Almazan
5   may be long time medical consultants for the disability insurance industry and/or Hartford.
6   As a result, Plaintiff believes Drs. Muhlbauer and Almazan may have incentives to protect
7   their own consulting relationships with the disability insurance industry and/or Hartford by
8   providing medical records only paper reviews, which selectively review or ignore evidence
9   such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are
10  favorable to insurance companies and/or Hartford and which supported the denial of
11  Plaintiff's claim.

12  24. In a letter dated April 2, 2014, in order to engage Hartford in a dialogue so
13  she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy
14  of any and all medical records only "paper reviews" from Hartford and the opportunity to
15  respond as well as to provide these reviews to her treating physicians for their response,
16  prior to Hartford rendering a final determination in her claim.

17  25. In a letter dated June 30, 2014, Hartford notified Plaintiff it had denied her
18  claim for long term disability benefits under the Policy. Hartford informed Plaintiff in its
19  June 30, 2014 letter she had exhausted all administrative levels of appeal and could file a
20  civil action lawsuit.

21  26. Prior to rendering its June 30, 2014 final denial, Hartford never shared with
22  Plaintiff the reports authored by Drs. Muhlbauer or Almazan and never engaged Plaintiff or
23  her treating medical providers in a dialogue so she could either respond to the reports and/or
24  perfect her claim.  Hartford's failure to provide Plaintiff with the opportunity to respond to

25
26

1  the reports precluded a full and fair review pursuant to ERISA and is a violation of Ninth
2  Circuit case law.

3       27. Subsequent to Hartford's June 30, 2014 final denial, Plaintiff was approved
4  for and is currently receiving Social Security disability benefits through the Social Security
5  Administration (hereinafter referred to as the "SSA").

6       28. The SSA found Plaintiff became disabled from engaging in any gainful
7  occupation which may have existed in the national economy as of April 21, 2011.

8       29. In a letter dated January 21, 2015, Plaintiff informed Hartford her claim for
9  Social Security disability benefits had been approved and requested for Hartford to reopen
10 her long term disability claim to review the SSA's approval and consider whether that
11 approval and/or a review of Plaintiff's SSA disability claim file may change its decision to
12 deny her claim.

13      30. In a letter dated February 3, 2015, Hartford informed Plaintiff it was
14 unwilling to reopen her long term disability claim or consider any additional documentation.

15      31. The SSA's definition of disability is more stringent and difficult to meet than
16 the aforementioned definition of disability in the Hartford Policy for the first 24 months of
17 disability and is substantially similar to the Policy's definition of disability after the first 24
18 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence
19 for this Court to consider with regard to the lawfulness of Hartford's decision to deny
20 Plaintiff's benefits and its unreasonableness in failing to reopen Plaintiff's claim in order to
21 properly evaluate SSA's approval and the basis of that decision.

32.     In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

33.     Hartford failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Hartford's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA, of Ninth Circuit case law and is a reason she did not receive a full and fair review.

34.     Plaintiff believes Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider the approval of Plaintiff's Social Security disability claim; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

35. Plaintiff further believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Hartford undertook as decision maker and payor of benefits which created an inherent conflict of interest and provided a financial incentive for it to the deny the claim.

36. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Hartford and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and any ERISA procedural violation which may have impacted or influenced Hartford's decision to deny her claim.

37. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Hartford as referenced herein are so flagrant they justify *de novo* review.

38. As a direct result of Hartford's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance

1 coverage and/or the waiver of the premium on a life insurance policy providing coverage for
2 her and her family/dependents.

3      39.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
4 prejudgment interest, reasonable attorney's fees and costs from Defendants.

5      40.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
6 §20-462, or at such other rate as is appropriate to compensate her for losses she incurred
7 as a result of Defendants' nonpayment of benefits.

8      WHEREFORE, Plaintiff prays for judgment as follows:

9      A.     For an Order requiring Defendants to pay Plaintiff her long term disability
10 benefits and any other employee benefits she may be entitled to as a result of being found
11 disabled pursuant to the Hartford Policy, from the date she was first denied these benefits
12 through the date of judgment and prejudgment interest thereon;

13      B.     For an Order directing Defendants to continue paying Plaintiff the
14 aforementioned benefits until such time as she meets the conditions for termination of
15 benefits;

16      C.     For attorney's fees and costs incurred as a result of prosecuting this suit
17 pursuant to 29 U.S.C. §1132(g); and

18      D.     For such other and further relief as the Court deems just and proper.

DATED this 1st day of June, 2015.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff